## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE:

**LARADY LIZ RAMOS ORTIZ**          **CASE No: 15-02053-BKT**
                                    **CHAPTER 13**

Debtor(s)

---

### TRUSTEE'S MOTION TO DISMISS

**TO THE HONORABLE COURT:**

**COMES NOW**, Alejandro Oliveras Rivera, Standing Chapter 13 Trustee, and very respectfully, **ALLEGES, STATES** and **PRAYS**:

### INTRODUCTION

1.    The trustee requests the dismissal of this case for cause pursuant to Section 1307(c) of the Bankruptcy Code.  The underlying basis of this request is debtor(s) failure to disclose changes in financial circumstances, which would allowed debtor(s) to pay a higher dividend to general unsecured creditors.  Appearing below is a discussion with the factual and legal grounds that support trustee's request for dismissal.

### DISCUSSION

2.    Per distribution on the confirmed/approved plan, the non-priority unsecured creditors receive a dividend of approximately 2.779%.

3.    Upon review of debtor(s) tax returns and the disclosure of income at Schedule I, there is additional income not disclosed in the case.  This in turn would have increased distribution to non-priority unsecured creditors.

4.    Appearing below is an analysis of debtor(s) income per

the state tax return(s) and the income disclosed at Schedule I:

| Year | Refund Amount | Gross Income | Average Monthly Inc | Schedule "I" | ADDITIONAL MONTHLY INCOME |
|------|--------------|--------------|---------------------|--------------|---------------------------|
| 2018 | $0.00 | $23,587.00 | $1,965.58 | $1,428.39 | $537.19 |

5.    In our jurisdiction, the case of In re Pick and Save[1],

citing the 9th Circuit bankruptcy appellate panel case of In re

Searles[2], this Honorable Court concluded as follows:

> "The duty to disclose is a continuing one that does not end
> once the forms are submitted to the bankruptcy court; rather,
> a debtor must amend his financial statements if circumstances
> change' Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286
> (11th Cir.2002), citing In re Coastal Plains, Inc., 179

6.    There are other courts that have sustained bankruptcy

debtors' continuous duties. See, In re Midkiff, 342 F.3d 1194,

1201 (10th Cir.2003) where the court citing 11 USC § 521 stated,

that Chapter 13 debtors **retain their duty** to inform their trustees

of relevant developments in their financial situations... (Our

emphasis).

7.    The Court of Appeals for the Tenth Circuit has correlated

a chapter 13 debtor's duties -including the duty to inform changes

in his financial information- with the benefit of receiving a

discharge.  In this respect, the Court of Appeals reasoned:

> "*a debtor who voluntarily submits him or herself to the
> jurisdiction of the bankruptcy court to obtain the*

---

[1] 478 B.R. 110 (Bankr.D.P.R. 2012).
[2] 317 B.R. 368 (B.A.P. 9TH Cir. 2004).

*benefit of a discharge of debts, must fulfill certain duties to insure that estate assets are administered in accordance with applicable law.*" <u>In re Beach</u>, 281 B.R. 917, 921 (10th Cir. B.A.P. 2002).

8. Applying the reasoning of the appeals court to the facts of the instant case, trustee submits that debtor(s) has/have dischargeable unsecured debts, which would have received a higher distribution, had debtor(s) notified the change in financial circumstances in **year 2018** and paid into the plan the additional disposable income received.

9. The Eleventh Circuit has stated that debtor's duty to disclose assets is a continuing one that does not end once the forms are submitted to the Bankruptcy Court; rather, a debtor must amend his financial statements if circumstances change. 11 U.S.C. § 521(1), 541(a) (7). <u>Burnes v. Pemco Aeroplex, Inc.</u>, 291 F.3d 1282 (11th Cir. 2002).

10. In turn, Debtor(s) failure to notify the change in financial circumstances is "cause" for dismissal of the instant case under Section 1307(c). In the case of <u>In re González</u>[3], the First Circuit bankruptcy appellate panel concluded: "*The list of grounds for dismissal or conversion found in § 1307 is not exhaustive; the court is not limited by the specific circumstances specifically mentioned there…*". Same reasoning applied in the case of <u>In re López Llanos</u>[4], and <u>In re Marquez</u>[5], by our Honorable Court.

---

[3] 341 B.R. 371 (1st Cir. B.A.P. 2006).
[4] 578 B.R. 700 (D.P.R. 2017).
[5] 2011 WL 4543226.

While the mentioned cases do not deal with the issue of a debtor's failure to notify change in his/her financial circumstances, the principle of "cause" under Section 1307 (c) should be applied to the controversy in the instant case, particularly as the term "cause" is not restricted to the matters mentioned in Section 1307(c). Moreover, and of great weight to find "cause" in the instant case is the fact that **a debtor's obligation to pay all of his disposable income is a critical requirement in a chapter 13 case**, thus, debtor(s) failure to notify the change in financial circumstances and pay into the plan the additional income received should be cause under Section 1307(c) and therefore the case be dismissed.

11. Debtor(s) failure to notify the change in financial circumstances suffices as "cause" to dismiss the case. Yet an additional cause for dismissal is a finding of bad faith. See In re Sullivan, 326 B.R. 204 (1st Cir.BAP 2005). Sullivan, supra is cited for the proposition that under Section 1307)(c), the court can dismiss a chapter 13 case on bad faith grounds. Applying a "totality of circumstances" test this Honorable Court should find cause to dismiss case on bad faith, as debtor(s), who is/are represented by counsel, should have been aware of the obligation to notify the change in financial circumstances and to pay into the plan the additional disposable income. Also to be considered under the totality of circumstances is the detrimental impact debtor(s) failure to comply with said obligation had on the

unsecured creditors, as they failed to receive the dividend they could have, had debtor(s) notified the increase in income. Cited as an example of the importance of the accuracy of the schedules in chapter 13 is the case of In re Letsche, 234 B.R. 208 (Bankr.D.Mass.1999) where Judge Feeney, of the bankruptcy court for the District of Massachusetts denied confirmation and dismissed the case on bad faith grounds. While the ruling was based on debtors' failure to state their debts and expenses and to their repayment to undisclosed credit cards and to loans from family members, the court also noted the additional disposable income debtors had per Schedules I and J that was not devoted into the plan and how that impacted adversely the unsecured creditors[1]. Regarding this issue, the court stated: "The Debtors' original 60-month Chapter 13 plan provided for monthly payments to the Chapter 13 Trustee in the sum of $269.00 and a 15% dividend for unsecured creditors, whose claims, according to the Debtors, totaled $97,014.00, a sum predicated upon the complete avoidance of Connelly's lien. **It also was predicated upon the Debtors' Schedules I and J pursuant to which the Debtors disclosed joint monthly income of $2,530.00, joint monthly expenses of $2,168.00 and excess income of $362.00. The Debtors never explained why they were contributing $269.00 per month toward plan payments, rather than $362.00. The difference of $93.00 per month over 60 months could have increased the dividend to unsecured creditors by 5.75%.**" (Our emphasis).

12. Considering the above facts and legal grounds, the trustee deems that this Honorable Court should grant this motion and enter an order for the dismissal of this case.

13. The Trustee has reviewed his file as well as the documents included in the Court's file and to the best of his knowledge information and belief, debtor(s) do not belong to the U.S. Armed Forces, the U.S. Coast Guard, the U.S. Public Health Service or the National Oceanic and Atmospheric Administration. A certificate issued by the U.S. Department of Defense, Manpower Data Center is attached to the original motion filed and the Trustee's copy regarding the military status of Debtor(s).

**WHEREFORE**, it is respectfully requested from this Honorable Court to grant this motion and consequently, enter an order dismissing the instant case for cause, pursuant to Section 1307(c).

**NOTICE:** Within thirty (30) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date I electronically filed the above document with the Clerk of the Court using the CM/ECF System which sends a notification of such filing to all those who in this case have registered for receipt of notice by electronic mail. I further certify that the foregoing has been served to the U.S. Trustee at

ustpregion21.hr.ecf@usdoj,gov and by depositing true and correct copies thereof in the United States Mail, postage prepaid, to the non CM/ECF participants: debtor(s), at the mailing address of record.

**RESPECTFULLY SUBMITTED.** In San Juan, Puerto Rico, this 30 day of May, 2019.

**ALEJANDRO OLIVERAS RIVERA
CHAPTER 13 TRUSTEE**
P.O. Box 9024062
San Juan, PR 00902-4062
Tel. 977-3500  Fax 977-3521
aorecf@ch13sju.com

By: **/s/ELVIS CORTES ROSA**
ELVIS CORTES ROSA
Staff Attorney
USDC-PR # 305214
CCA-MIM

Department of Defense Manpower Data Center

Results as of : May-29-2019 04:00:19 PM

SCRA 4.11



## Status Report
## Pursuant to Servicemembers Civil Relief Act

SSN:            XXX-XX-5458

Birth Date:

Last Name:      RAMOS ORTIZ

First Name:     LARADY

Middle Name:    LIZ

Status As Of:   May-29-2019

Certificate ID: 84P5HDQ37J023FN

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento, Director

Department of Defense - Manpower Data Center

400 Gigling Rd.

Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.